I.N. Thank you, Your Honor, I'm Steve Hopicek, Federal Defender on behalf of Mr. Jimenez-Borja. Your Honor, first I'd like to address the sufficiency issue. As the Court knows, the indictment alleged that Mr. Jimenez was found on October 5th of 2001, whereas the actual evidence demonstrated that the first immigration contact that was demonstrated at trial was actually... The statute doesn't say who has to find him. The statute... It has to be found by somebody, found is both an active and a passive verb. That's correct, Your Honor. You can even find yourself, you can be reflexive. That's true. I mean, quite literally, I mean, you find yourself in... Right, I find myself arguing for you. Maybe you wake up, you've been asleep, or maybe you've been knocked out or something, and you've been with someone else, you wake up, you find yourself someplace, it's not at all unusual. No, I agree, and it's definitely the plausible reading of the word found. It's just not the meaning that's been adopted by all the courts that have construed the statute. And... Not in this context. Not in the sufficiency context. Well, I... Those were venue cases. Right. Venue cases, statute of limitation cases, ex post facto cases, I agree there isn't a sufficiency case, but my point is, is that these cases that have arisen in other contexts have interpreted that language, and the interpretation that they give to that language is equally binding on this panel, even if the issue here happens to be sufficiency of the evidence. And particularly with respect to the Hernandez case, the court there said that we're going to decide when this offense is committed, because venue is a constitutional concern we want to know. And I would cite the court to page 789, it says, we must determine what conduct constitutes the offense of being found in the United States. And on two separate occasions in the opinion, this court in Hernandez found that, or held, that the person is found when they are discovered by immigration authorities. And that's at page 789, and at page 791. So essentially, you can commence the offense prior to your discovery, but you do not complete the offense until your discovery by immigration authorities. That's why, you know, if you're found by the state authorities six years earlier, and then are later found by the immigration authorities, that you don't have a statute of limitations defense because it's not the finding by the state authorities that matters, it's the finding by the federal authorities. Let me tell you how I saw it, and you tell me where I've missed the boat. It looked to me like this trial was a complete mess, starting with defense counsel referring to it as a re-entry when it's charged as found in, the instructions are screwed up, there aren't objections to the instructions, but when you get right down to it, there's really no denying that this guy re-entered, that he was found in, that he was continuously in custody from the moment he was encountered by the local cops up through and including when he was encountered by INS, and those things started going. There's no question about venue here, there's no question about the statute of limitations running, there's no question about an alibi having been lost because of a screw up in the dates. When all is said and done, this isn't the most elegant example of how to prosecute these things, but there's really, it's much ado about nothing, there's really no harm here. I agree with some of the things Your Honor is saying, it is a messy case, and it's not elegant, and there were mistakes made right and left. Mistakes were made. However, the no harm, no foul analysis I don't think applies here, because we're talking about the Fifth Amendment right, and I realize that... Being actually to be prosecuted on the charge that the grand jury returned, and in this case, the grand jury returned a charge that this gentleman was found in October. They did not return a charge that he was found in March, so that is the harm. He is being denied his substantial right to be prosecuted and to have a jury determination on precisely what he was charged in the indictment, and that's what's behind the Styrone case and all the cases that have followed that have vindicated claims on these bases. In Styrone, there wasn't really a claim that the guy was innocent, that he wasn't guilty of bringing sand into or out of the state that was involved in that case. The point was, is that based on those jury's instructions, the petite jury could have convicted him on something that the grand jury didn't indict him on. Well, here the grand jury indicted him on being found, and found means by an INS officer, in October, and in March is when he was actually found. Now, this Court has never approved a five-month gap in terms of the reasonably near standard. In fact, virtually every case that this Court and the Supreme Court have decided, the maximum seems to be about 30 months, so we're talking 30 days. What's the prejudice? The prejudice is the denial of the grand jury right to be charged and prosecuted solely on what the grand jury returns, and there's also a notice issue. But he's picked up on day one, and he's kept in custody all the way down to day two, which is the one that's in the indictment. Right. What's the prejudice? I'm sorry, Your Honor. When you say day two that's in the indictment, I think that you mean day one. I mean, the day that he's arrested is October 5th, or taken into custody by the Escondido police officers. Right, but he wasn't, quote, encountered, once they found, by the INS until the latter day. Right. That's true. Well, in Casterline... So what's the prejudice? The prejudice... How can he be misled in terms of a defense or whatever? Okay, well, he could have been misled because when he went to trial, he was expecting the government to prove that the INS found him on the date that was charged in the indictment, October 5th. But I don't see anything in the record where the guy says, gee, I was planning to prove I was in Miami, Florida that day. I mean, there's no evidence of any of that. Well, I agree that that is not in the record. But there is... The evidence is that he was continuously in custody. So in answer to Judge O'Scanlon's question, you've told us the violation is he wasn't charged, he was prosecuted for a different crime than the one for which he was indicted or a different date. But what's the prejudice? Not what the violation is, but what's the prejudice? Well, I think that there is prejudice for being convicted on a crime you're not charged by the grand jury on. But number two, there is a notice problem because if you're prepared to defend against the INS finding you on October 5th, and then they present evidence that the INS found you in the following year in March, then you are prejudiced because you weren't prepared for what the government actually offered. Aren't you arguing that it's structural error for which no prejudice needs to be shown? I do have a structural error argument because I think that the... I'm not trying to put arguments in your mouth, I'm just answering just to make sure I understand. I thought what you were arguing is if you get tried for an offense which is different than an offense and an indictment, then you suffer structural error. That's correct. And no prejudice can come because you just weren't tried on the thing that you were indicted for. Right. I think that the... Is that... Yes, that's correct. I think that the evidence here is insufficient, so he's entitled to a judgment of acquittal. I think that the jury instruction which eliminated the found-in offense is a constructive amendment of the indictment which requires reversal per se, and I also believe the fact that when you combine the omission of the found-in and the omission of any requirement that his acts be voluntary, that that is a structural error because it combines the omission of two separate elements of the offense, so the neater Grassidis-Ulibarri harmless error analysis wouldn't apply. So, yes, I do think the error here is structural. And the first issue that I've addressed I think should result in a judgment of acquittal because Alviso holds that even though, you know, I agree that it's not the most compelling claim in the world in terms of... So let's say we rule in your favor and we order a judgment of acquittal. Can he then be tried again for having been found in the United States on the day when the INS agents actually did find him? I think that's conceivable. I mean, you know, if it were my case, I would try to move to dismiss it on double jeopardy grounds, but... The argument's a different offense. So I think I would have problems. The argument's a different offense. You know, they didn't prove this offense, but... That's why I'm glad I'm here making this claim. Isn't there a flip side of that, that then they're free to try him again? I think that's a possibility. But, you know, maybe I shouldn't be debating the wisdom of this particular rule because it is this Court's rule. Alviso says that you have to prove a date reasonably near the date in the indictment. So whether we think it's a good rule or a bad rule, it's the rule. And I think it's binding on this panel. And again, there's no case that has approved anywhere near a five-month gap. The only one that the government could argue, I think, would be the Godinez case, which had, I think, a longer gap than five months, but that was a plain error indictment challenge after the individual had pled guilty. The other thing that's important about Godinez is that it's entirely distinguishable because... You did raise this argument below. I'm sorry? You did raise this argument below. The sufficiency argument? Well, yes, we did raise the argument, but we raised it in the context of a general Rule 29 motion. And the government's argued in their response brief that we didn't articulate the argument and that we were obliged to do so. But this Court's Baxley case is to the contrary. And Baxley was followed in the First Circuit case of Hamoud, which pointed out that a general Rule 29 motion, and that's precisely what was made here, I believe that at Rule 78... When you say general, you mean a generic? Yes. You mean... I'm not going to tell you, Judge, I'm not going to tell you why they failed to meet their burden, but I'm going to make a motion and let you guess. And if you deny it, I've made my motion and I'm covered. It was that kind of motion. Yeah. I've seen many of them. I'll just quote it. There was no hint that, gee, you got insufficient because of this. It's fair to say there were no hints. At 78 of the excerpt of record, the motion is, quote, we would move for Rule 29, close quote. So it's very general. I think the government described in their response brief as the most general motion possible. And that's probably true. But the bottom line is, is that Vaxley, one of this Court's decisions, holds that that's all that it takes. And Hamoud, Gergerash from the Second Circuit, Cox from the Sixth Circuit, and Miller says Rule 29 has no specificity requirement and Rule 30 does. So there's a real... There just simply is no specificity requirement. Maybe they should change Rule 29, but the bottom line is there's no requirement of specificity. And that allows you to distinguish the other case that was more than six months. Yes. I think there's two bases to distinguish it. The Godinez case is a plain error review after the individual pled guilty. So it's just an indictment challenge. And then number two, the other point about Godinez is, is that the range of dates that were charged in that case were all dates that INS was involved in. What they did is the first date that they charged in Godinez was they said he... I think it was like a December to August period. They first alleged that he was found between December and August. Well, December was the day that INS filed a detainer against him. And then August was the day that they actually took possession of his body. So all the dates alleged in Godinez were federal dates. So the issue in that case is entirely different. Whereas here, the grand jury charged this guy with being found on October 5th. And there is no federal involvement on that day at all. So I think Godinez is doubly distinguishable. Now, moving on to the jury instruction issues. I do think that not charging the petite jury on the found in requirement is a constructive amendment because it effectively changed the case from a found in case to a reentry case. And I agree with Judge Silverman that there was a lot of messiness in this particular trial. But if the district court judge had followed up on the objections made by defense counsel before the petite jury was instructed, it would have cured all the problems that had gone up to that point. She asked that the jury be instructed that he has to voluntarily enter and he has to be found in the United States. Those objections were explicitly overruled by the district court. And I believe that's at page 72 of the excerpt of record. So I don't think that the government's argument that the constructive amendment issue is not preserved as well-founded because it wouldn't make any sense to say that the difference would have been made if you just said, well, I need a found in instruction. And if you don't give it to me, it's a constructive amendment. It's more than adequate just to say, I need the found in instruction because that's and that is in fact what was contained in the indictment. So I don't think any additional instruction would be necessary under those circumstances. Unless your honors have any other questions, I'd like to reserve the rest of my time for the panel. Okay. The government. Thank you, your honor. The court please. David Kernal, appearing for the government. First of all, with regard to the question posed on the sufficiency argument as to what the prejudice was here, it's interesting that counsel says, well, he could have proved this or he could have proved that. And the fact of the matter is that there is no evidence in the record whatsoever as to what he was thinking about proving. In fact, what is in the record is that this individual's defense was that the INS records were so messed up that there was no proof of alienage and there was no proof that there was a lack of consent to come into the United States. That was the entire defense in this case. Every other element was admitted or was not contested in this particular situation. Your argument, the objection wasn't, this issue was not preserved in effect? I would say so because we were working on a bare record. Number one, we have a general, as we pointed out, a general motion for acquittal, which, in the cases that we've cited, is criticized because of the idea of a rule 29 motion is to give the government and the court a chance to clean things up. We just simply were not put on notice that there was any problem. And the defendant throughout the entire trial never said a thing that would put anybody on notice that he was somehow prejudiced by the fact that he thought that he had to be found in the United States by INS rather than by the Escondido Police Department. There's simply no evidence whatsoever in the record at all about that. What about the structural error argument, structural defect? Well, we go back to our original, the arguments that we made here and that Judge Kaczynski started off with, that it really doesn't make any difference who finds you in the United States for the purposes of guilt or innocence. The cases that are cited, as you pointed out, have to do with statute of limitations, which goes to an affirmative defense, venue, which is basically where you're going to try the case, and sentencing guidelines as to what the penalty is going to be. None of those have anything to do with guilt or innocence. Being found in does, and it doesn't make any difference who finds you to establish whether or not you are guilty of being found in or being illegally in the United States without permission from the Attorney General. Also, I would point out that the Alvisu case that is touted by the defense is a variance from the indictment case, just like all the rest of the cases, including the one with the Native American name that I can't possibly pronounce, at 112 Fed Third, which explains the reasons why the Alvisu case, upon its replies, says that the government violated his Fifth Amendment right by failing to prove that he had found him on the date specified in the indictment. And the reason that's stated for that rule is so he can know what he's being accused of doing in violation of criminal law, so he can prepare his defense, number one, and number two, to avoid a double jeopardy claim. Those are the two reasons for that particular defense. And in this particular situation, as you point out, Judge O'Scanlan, he knew perfectly well where he was and what he was doing because he was in custody continuously from the time he was apprehended by Escondido police until the time that the INS agent contacted him in the federal holding cell. And of course, the problem, again, with this general motion for acquittal, is that had the government been put on notice that this was a problem, we could have, or possibly could have, shown that there were other contacts by INS up before in the county jail or at times that were closer in time, because this contact did take place in the federal holding cell, in the federal building, and not in the county jail. So obviously there was something that was going on that, of course, we don't know anything about because we had a general motion for acquittal. With regard to the jury instructions, we again point out, and I will agree with you, Judge Silverman, that this trial was more like a train wreck, but what's amazing is that in spite of that, the jury knew what it was supposed to do, and the jury found this person guilty. And maybe they didn't know what it was supposed to do. Well, they signed a jury verdict finding them guilty of being found in. Maybe they were confused. I mean, maybe the fact that they reached a verdict is not proof that they knew what they were doing. It may just be proof that they were confused. Well, I'd answer that in two ways. Number one, they asked no questions. Number two, they weren't out that way. They were good and confused. Well, there's no other. They weren't given two jury forms. No, they were given a form, a found-in form. They didn't pick found-in versus re-entered. No, they didn't. But if they had had a question, if they truly had a question, one would think they would have asked the question and sent out a note to the judge, number one. Number two, one would think they would have taken longer to return the verdict than they did.  finding of guilt. Secondly, as has been brought up, there is no showing of either, if you want to call it prejudice or harmless error, this individual was not in any way harmed by what happened because, again, there was simply no contest of any of the elements, the found-in element, throughout the entire trial. The only defense came through argument of counsel at the end, and that had nothing to do with whether or not he was found in or not found in. Unless the court has any questions, I'm willing to submit. Thank you. Thank you. No, I didn't have a closer look at Hernandez. And Hernandez seems to say that they're being found in. This is a page seven. This is one eighty nine at seven ninety. It seems to say it's a continuing offense. It continues as long as the alien remains in this country. This is citing an earlier case and it ends. When the I.S. picks him up, so once you're picked up. The offense ends, but it sounds to me this is really Hernandez here again with this in mind, and it seems to cite a case called Guzman Bruno that the offense is continuing until from the date of entry to the date he gets picked up. The offense is not a continuing offense in the sense that it is complete and continues on for a period of time. For instance, let's say I possess drugs with the intent to distribute. I possessed them a week ago and I continue to possess them up to this date. That offense is complete from the moment that I possess them with intent to distribute, and then it continues until this date. The this offense is different because what happens here is that you can start the conduct, i.e. you can either enter the United States without permission or remain here without permission. But the offense is not complete or the offense does not actually occur until you're actually discovered by the I.N.S. authorities. That's an argument. But remember, we were talking in the beginning about the passive and active form of crime. And it, you know, here they're quoting, I'm reading here from from Hernandez and they're quoting the Guzman case from earlier against the backdrop. We stated that, quote, a violation of 8 U.S.C. 1326 for being found in the United States after prior deportation is a continuing offense which continues so long the alien remains in the country. And the offense then gets completed. You stop being found in the country once you're an I.N.S. custody. You no longer commit an offense because at that point you're an I.N.S. custody and you're under arrest. So even though you're sort of physically still in the country, you're no longer, you know, this is not another, you're not still offended because you're being kept by the I.N.S. That's what I read this passage to mean. Well, if that's true, then he clearly was found from the minute he, from the minute he came in through the time when he was arrested by the state authorities until the date that he was picked up by the I.N.S. I respectfully disagree. First, with respect to Hernandez, at 789, it says a deported alien is found in the United States when the alien is discovered by the immigration authorities. Actually, it says by the authorities and then cites a bunch of immigration cases. So that is not inconsistent. He can be found on that date. He could also be found on a prior date. It doesn't say that that's the only date he's found. And then there is this other part of Hernandez that seems to suggest it's a continual violation. It's a continuing violation, but not in the sense that the offense is complete. An incomplete offense has not been committed. It's effectively an attempt. And there is no such thing as I understand how something can be a continual violation. And and not be a complete offense, if it's not a complete offense, it's not a violation at all. Well, in Ruelas, if you don't do the last act to complete the offense, you haven't got an offense. Let me ask you about another paragraph following up on Judge Kaczynski. It says the the offense of being found in ends when the alien is discovered and identified by immigration authorities. But then it says we conclude that the crime is complete at that point. Not only for statute of limitations and sentencing guidelines, but for venue, not talking about for guilt or innocence. We're talking about for statute of limitations purposes, deciding which court you bring the charge in. I agree that they did say for the purposes of venue, but in the earlier part of the opinion, they say that what we're going to determine for the purpose of the constitutional venue requirement is when what conduct constitutes the offense of being found in the United States. So when they reach that conclusion, that panel is finding that that's when the offense was committed. Now, Ruelas-Arragin at 219 Fed Third 1061 says that the offense commences with the illegal entry, but is not completed until discovery. And so it says in that sense, it is a continuing offense. So when it says in that sense, it's a continuing offense. What it means is the conduct starts, but the offense itself is not completed until there's discovery by the INS. So I think that still makes it clear that the offense is committed when the INS discovers you and not at any other time. Now, with respect to the government's argument that the jury may have somehow cured all the problems by filling out that jury form, two cases that I've cited in the opening brief, I think rebut that proposition. Vowiel and Pazint, Vowiel at page 869, Fed Second at 1271. And it says a conviction should not rest on ambiguous and equivocal instructions to the jury on a basic issue. In that case, there were arguments that, well, the grant, the petite jury might have got it right because we read the indictment to them. But basically, you know, an equivocal or ambiguous record is not sufficient. And if the district court had granted the defense request for a voluntariness and a found-in instruction, it would have cured all these problems. So I think any way you look at it, you still have the structural error on the jury instructions. And I still believe that Hernandez stands for the proposition supported by Ruelas. And even the Guzman-Bruno case that Your Honor brought up earlier, that case says the district court was correct to state that Guzman-Bruno was arrested by INS agents as the day that he committed the offense. So Guzman-Bruno also says the day of discovery by the INS is the day he committed the offense. And that's at 27 Fed Third 422. Does Your Honor have any other questions? I'll submit. Thank you. Thank you, Your Honor. Can we just argue for a minute? We are adjourned. All rise. The court for this session stands adjourned.
judges: Kozinski, O'scannlain, Silverman